Burke, J.
Defendant appeals, by leave of a Judge of this court, from a judgment of the Appellate Division, First Department, affirming a judgment of the Supreme Court, New York County, convicting him of the crimes of bribery (former Penal Law, § 378) and taking unlawful fees (former Penal Law, § 1826), respectively, counts three and six of his six-count indictment. Defendant’s conviction for these crimes was predicated upon his allegedly having aided and abetted in their commission (see former Penal Law, § 2). He was sentenced to concurrent two to three-year sentences on each count.
The factual background of this case is relatively simple. The defendant Morhouse, a prominent political leader at the time in question, is accused of having been a party to the bribing of Martin Epstein, former Chairman of the State Liquor Authority, by the backers of the New York Playboy Club. The object of the bribe was the securing of a restaurant liquor license for this establishment.
The People’s case, developed through Arnold Morton and Robert Preuss, both officers of Playboy International Clubs, and Ralph Berger (whose conviction in our courts was recently reversed by the Supreme Court, Berger v. New York, 388 U. S. 41), all ruled accomplices by the trial court, established that *71 before Morhouse came into the picture there had been a corrupt understanding between Epstein and the Playboy people that Epstein in return for a $50,000 bribe would help the Playboy people with certain “ problems ” blocking their obtaining a liquor license; that this deal fell through when Hyman Siegel, an attorney retained by the Playboy people at Epstein’s suggestion, told them that, because a $25 purchase of a key was to be required for admission, only a private club license, not a restaurant license, could be issued; that, at Epstein’s suggestion, Morhouse was then brought into the matter; that Morhouse assured Morton and his associates that he would handle their problems with Epstein in return for $100,000 plus other considerations; that Morhouse indicated he was aware of the corrupt arrangement with Epstein*; that following Morhouse’s agreement with Morton and Preuss to help them secure their license, Berger received a telephone call from Epstein, reporting that Epstein and Morhouse had discussed the deal that the Playboy people had made with Morhouse and instructing Berger to. collect Epstein’s $50,000 as soon as possible; and that subsequently Epstein was paid, through Berger, one half of his $50,000 bribe.
Under the People’s theory of the case Morhouse occupied a dual role, on the one hand as aider and abettor of the Playboy people in bribing Epstein and on the other as aider and abettor of Epstein in the taking of an unlawful fee. This, of course, would be perfectly possible if Morhouse, with the requisite intent to aid both the Playboy people and Epstein, aided and abetted, counseled, commanded, induced or procured the actual perpetrators of these separate crimes to commit them (see former Penal Law, § 2.) This the jury found, on evidence which we feel was sufficient as a matter of law.
Among other grounds for reversal urged by defendant on this appeal is the sufficiency of the People’s proof, with defendant claiming that the circumstantial evidence placed before the jury by the prosecution did not lead exclusively to the inference of *72 defendant’s guilt of the crimes of which he was convicted and that the accomplice testimony was not sufficiently corroborated.
The defendant makes much of the fact that it was the People’s theory that Epstein’s going through with his corrupt agreement was ‘ ‘ contingent ’ ’ upon the Playboy officers ’ making a deal with Morhouse. He argues that the evidence does not exclude the possibility that Morhouse was ignorant of such a “ condition precedent.” Be this as it may, however, we hold that it was sufficient for Morhouse to be held liable as an aider and abettor of the bribers, count “ three ” of the indictment, that he knew, as Berger’s and Morton’s testimony indicated he knew, that Epstein was to be bribed and that he attached himself to the cause of the bribers and encouraged them to continue with the corrupt agreement. His representation to the bribers that he could handle Epstein surely, at least indirectly, induced them to continue with and consummate the agreement with Epstein, which before Morhouse’s entry upon the scene had fallen through. So, also, his knowledge of Epstein’s agreement to take a bribe in return for favorable action on the Playboy application, coupled with his active assistance in bringing about Epstein’s receipt of the unlawful payment, was sufficient to hold the defendant liable on the sixth count as an aider and abettor of Epstein in the crime of taking unlawful fees. While in one sense Morhouse might have been indifferent as to whether Epstein ever got paid, his own payment depended upon his success in getting the license for the Playboy Club, which required getting Epstein to go through with his bargain with the Playboy people. This establishes a sufficient identity of interest between Epstein and Morhouse for Morhouse to be held as an aider and abettor of 'Epstein.
The question of whether an accused aider and abettor sufficiently shared the intent of the actual perpetrator of a crime to make him liable as a principal is very often a difficult one. However, such was the stake the defendant Morhouse had in the outcome of the Epstein-Playboy transaction that we cannot see how he had anything less than the strongest interest in seeing this deal go through. The situation here is not at all like that obtaining in a number of the cases cited by defendant on this issue. In Morei v. United States (127 F. 2d 827 [6th Cir., 1942]), for instance, the defendant Platt, who had referred the *73 Government informer to Morei as one from whom heroin might be obtained, ostensibly for the purpose of “ doping ” race horses, had no personal interest in seeing the crime committed. (See, also, to the same effect, United States v. Moses, 220 F. 2d 166 [3d Cir., 1955]; Robinson v. United States, 262 F. 2d 645 [9th Cir., 1959].) Here, in contrast, the accomplice testimony, if believed, compels the inference that the defendant Morhouse’s attitude toward the commission of these crimes, in whose commission he knowingly played a positive role, was “ purposive ”. (See the opinion of Judge Learned Hand in United States v. Peoni, 100 F. 2d 401 [2d Cir., 1938], at p. 402, cited by defendant as the classic exposition on this subject.)
More closely analogous to this case is United States v. Manna (353 F. 2d 191 [2d Cir., 1965], cert. den. 384 U. S. 975 [1966]). There the defendant Manna was convicted as an aider and abettor in the sale of narcotics on far less evidence of participation than appears here. Manna, himself a narcotics dealer, when approached by an undercover Government agent seeking to purchase drugs, explained that his supply was short and, therefore, he could not provide the drugs, but he referred the agent to another dealer, one Bay, with a message that the defendant wanted Bay to take good care of the agent. There was evidence that Bay made the sales reluctantly and only because of the defendant’s requests. Manna was held by the Court of Appeals for the Second Circuit to be an aider and abettor of Bay, on the basis of the fact that he “ had sufficient ability, influence and control here to bring about a sale that, without his participation, would not have been made” (353 F. 2d, supra, p. 192). Similarly, in the instant case, the bribe of Epstein would not have taken place without the influence and encouragement of Morhouse. The deal had collapsed and he revived it.
Our decision in People v. La Belle (18 N Y 2d 405) is not inconsistent with what we hold today. There we held a defendant could not be held liable as an aider and abettor of premeditated murder where the People’s circumstantial evidence did not lead exclusively to the inference that the alleged aider and abettor had actual knowledge of his codefendant’s intention to kill the victim (18 N Y 2d, supra, pp. 411-413). Here, in contrast, if the accomplice testimony is believed, there is no question but *74 that Morhouse had knowledge of and shared the guilty purposes of Epstein and the bribers.
The defendant’s claim that the accomplice testimony given in evidence against him on his trial was insufficiently corroborated must also be rejected. As we indicated in People v. Fiore (12 N Y 2d 188, 201), the corroboration requirement of section 399 of the Code of Criminal Procedure is fully met when there is some nonaccomplice evidence ‘ ‘ fairly tending to connect the defendant with the commission of the crime ” (quoting from People v. Elliott, 106 N. Y. 288, 292). The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant’s guilt. As this court has noted, even “ Matters in themselves of seeming indifference * * * may so harmonize with the accomplice’s narrative as to have a tendency to furnish the necessary connection between the defendant and the crime.” (People v. Dixon, 231 N. Y. 111, 116-117; see, also, People v. Crum, 272 H. Y. 348, 353-354; People v. Malizia, 4 N Y 2d 22, 27; People v. Reddy, 261 N. Y. 479, 484.) The corroboration present here far exceeds this standard. It includes Morhouse’s arrangement for his payment by Playboy through its publishing affiliate, when he had concededly rendered no services to the publishing enterprise, his efforts, after the Grand Jury had begun its investigation, to have the payment of $18,000 to him by Playboy International (the night club operating corporation) shifted to the books of the publishing corporation, and Morhouse’s part in retaining one Marrus, an attorney, to make the application for the club’s license to the State Liquor Authority after Epstein had received the $25,000 from Berger, all of which were testified to by Hayes, an attorney friend of Morhouse, who was not an accomplice. It even includes Hayes’ testimony that Morhouse told him he had agreed to ‘‘ help out” the Playboy Club in its application for a liquor license, which application he told Hayes had ‘ ‘ gotten off on the wrong foot ’ ’. All of this is, as defendant suggests, consistent with the possibility that Morhouse was just ‘ ‘ selling influence ”, but it also tended to connect the defendant with the crime, which is all the corroboration the otherwise sufficient accomplice evidence required.
In People v. Mullens (292 N. Y. 408), also a bribery case, considerably less evidence than that present here was held *75 sufficient to connect the defendant Solomon with the crime of aiding and abetting his codefendant, Mullens, to take an unlawful fee. In that case this court expressly recognized that corroboration of a bribery, in order to satisfy section 399, need not be inconsistent with a theory under which the defendant would be innocent. “ So regarded,” the court commented, “ [such an] argument virtually means that the testimony of an accomplice in respect to the fact of a criminal bribery must in all cases be supported by direct evidence — a proposition that must be rejected ” (id., pp. 414-415).
The defendant’s attempt to seize upon that portion of the Mullens holding to the effect that, where the proof of a defendant’s guilty connection to the crime is the same as proof of the corpus of the crime, the corpus of the crime, i.e., the payment to the public officer, proven here only by Berger’s testimony, must be corroborated {id., p. 416), is also unavailing. For one thing, it is at least arguable that the Mullens requirement that the corpus of the crime be corroborated should not apply here, where Morhouse’s alleged guilty connection with the crime did not extend to actual payment of the money, only to bringing about the payment, and, for another, the issue of whether or not Berger actually gave the money to Epstein was taken out of the case by defense counsel’s numerous concessions on this point in his opening and summation and by reason of the fact that, in his cross-examination of Berger, counsel virtually conceded the point, assuming all along that Berger had made the payment. He used Berger’s confessed bribing of Epstein as a basis upon which to impeach his credibility and that of the other accomplices. This was undoubtedly sound defense strategy, but it also relieved the prosecution of any obligation of presenting further evidence on the question on the trial even though the jury was charged that it must find that a bribe took place in order to bring in guilty verdicts on the counts in the indictment on which Morhouse was convicted. (See People v. Brady, 16 N Y 2d 186, 190.) As this court said in People v. Robinson (284 N. Y. 75, 81), “‘A controversy put out of the case by the parties is not to be put into it by us. ’ ”
The balance of defendant’s brief is devoted to consideration of certain instances of eavesdropping conducted by the prosecution under court orders issued pursuant to section 813-a of *76 the Code of Criminal Procedure, recently declared unconstitutional on its face by the United States Supreme Court (Berger v. New York, supra). These eavesdroppings fall into two categories: (1) The Neyer and Steinman bugs, which were before the Supreme Court in Berger, and as to which defendant conceded on the trial his own privacy was not invaded, and (2) various bugs and wiretaps of which defendant’s counsel learned only after the trial of this case. We feel it best that the two categories be treated separately, and, therefore, so treat them.
With respect to the Neyer and Steinman bugs defendant claims that even though his own privacy was not invaded he still has standing to challenge any of the People’s evidence resulting from these bugs. In support of this contention he seizes upon the following statement from the opinion of Mr. Justice Clark in Berger: “ Since petitioner clearly has standing to challenge the statute, being indisputably affected by it, we need not consider either the sufficiency of the affidavits upon which the eavesdrop orders were based, or the standing of petitioner to attack the search and seizure made thereunder. ” (388 U. S., supra, p. 55.) Defendant urges that because of this statement, and various statements by the dissenting Justices in Berger, Berger stands for an abandonment of traditional standing requirements relating to the Fourth Amendment’s search and seizure requirements. (Cf. Wong Sun v. United States, 371 U. S. 471; Jones v. United States, 362 U. S. 257.) We do not so read Berger. Instead, we view the reversal of Berger’s conviction by the Supreme Court, without that court’s even reaching the question of Berger’s standing to attack the search and seizure upon which his conviction was based, as simply illustrative of the announced policy of the Supreme Court that its constitutional adjudications “ not stand as mere dictum.” (Stovall v. Denno, 388 U. S. 293, 301; see, also, People v. Kaiser, 21 N Y 2d 86, decided herewith.) We are not about to accept the proposition that the Supreme Court has abandoned traditional standing requirements until it declares such intention in a less ambiguous fashion than Berger, under defendant’s reading of it, purports to do this. Just recently we indicated in People v. McDonnell (18 N Y 2d 509, 510) that standing presented a ‘ ‘ threshold question ’ ’ in determining whether a defendant could challenge eavesdrop evidence. We adhere to this position, *77 and, therefore, hold that defendant cannot challenge the Neyer and Steinman bugs or any evidence obtained thereby.
As to the other eavesdropping conducted by the prosecution in this case far different problems are involved. There is, as the People concede, no question but that defendant has standing to object to these bugs and wiretaps. His own business office was bugged and phone calls to which he was a party were tapped. As the People also concede, defendant is entitled to a full evidentiary hearing on the question of whether the court orders authorizing these eavesdrops were properly issued and executed. Further, if there were improper eavesdrops, it must be determined whether the People’s evidence on defendant’s trial was “ tainted ” by such improper eavesdropping. On remand, however, Berger is not to be given retroactive application and, therefore, section 813-a is fully applicable to the case at bar. (See People v. Kaiser, supra.) The prosecution’s conduct in obtaining and carrying out these eavesdrop orders, and the orders themselves, are to be tested only against the standards reasonably believed applicable at the time such orders were obtained and this conduct occurred. (Cf. Stovall v. Denno, supra, pp. 296-297.) In this way we believe justice will best be served and defendant’s conviction on legally sufficient evidence not be voided upon the basis of refinements in criminal procedure only recently formulated by the United States Supreme Court and not at all related to the “ integrity ” “ of the fact-finding process. ” (See Johnson v. New Jersey, 384 U. S. 719, 728-729; see, also, People v. McQueen, 18 N Y 2d 337, 341-344.) On the other hand, if the court orders authorizing these eavesdrops were improperly issued or executed even under the law as it was then understood and if evidence obtained thereby tainted the People’s case, the defendant’s conviction ought to be vacated. Absent such a showing, however, it ought to stand.
On remand the trial court must also consider the defendant’s claim that the prosecution in failing to disclose the additional eavesdrops wrongfully suppressed evidence that might have helped the defendant and his claim that the prosecution by means of this eavesdropping interfered with his Sixth Amendment right to the effective assistance of counsel. Defendant argues vigorously that both of these alleged violations of his *78 constitutional rights compel reversal, but we are agreed that a remand for a full hearing on these questions is sufficient. Just what conversations were monitored or eavesdropped and their significance are questions beyond our competence to determine in the first instance upon appellate review. (Compare People v. Ahmed, 20 N Y 2d 958, where the nondisclosure of evidence was brought out on sentencing and the evidence unquestionably would have been helpful to the defense.) Both sides have submitted affidavits and transcripts of eavesdropped conversations, but such affidavits may well be self-serving and none of the transcripts are either clearly exculpatory or indicative of a direct intrusion into the attorney-client privilege.
The closest question of whether an outright reversal is called for is presented by the prosecution’s conduct in maintaining an electronic surveillance of Morhouse’s office after the defendant had become a suspect in the Playboy investigation and after the prosecution had learned that Morhouse was accustomed to conferring with his then attorney, Mr. Gelb, at this office. The People have submitted affidavits to the effect that the police officers monitoring this eavesdrop were instructed not to and did not listen to or record attorney-client conversations, but perhaps this is too much to leave to the discretion of officers executing a court-ordered eavesdrop. In addition, recordings were made of conferences involving Morhouse, Gelb, and one Aleer Couri, a business associate of Morhouse, which while not within the attorney-client privilege might conceivably be viewed as a prosecutorial intrusion into the councils of the defense. The transcripts of these conferences, however, do not indicate that Morhouse’s defense strategy was the topic of discussion. They indicate, rather, that Couri’s concern about appearing before the Grand Jury was the subject of discussion. In any event, though, we would like to see a full record made on this question, as can be done on remand, before deciding this issue.
In Matter of Fusco v. Moses (304 N. Y. 424) we indicated our wholehearted acceptance of the view that courts are not to indulge in nice calculations as to the amount of prejudice arising to a defendant whose right to counsel has been invaded (id., p. 433; see, also, Glasser v. United States, 315 U. S. 60). There, however, a direct, knowing intrusion into the attorney- *79 client privilege was at issue. People v. Cooper (307 N. Y. 253), although likewise not squarely in point, is, perhaps, a better guide to the attitude we should adopt here. There (then) Judge Fuld pointed out that the element of intention was a significant factor to be considered in determining the effect upon a subsequent conviction of a police officer’s overhearing discussions between the defendant and his attorney and that the burden was upon the defendant to establish an intentional intrusion of this sort (id., p. 260). Where, he indicated, the overhearing was unintentional and merely incidental to otherwise proper and legitimate police conduct and the record failed to disclose that the officer reported such overheard conversations to others, the conviction could stand. (Ibid.) Similarly, in the instant case it may be shown on remand that the electronic surveillance of defendant’s office was proper and that no violation of his right to consult with counsel in privacy occurred.
The many decisions of other courts, including the Supreme Court and lower Federal courts, cited to us by defendant do not mandate the procedure we should follow here. It would seem sufficient to fully protect defendant’s Fourth and Sixth Amendment rights and his right to due process that we simply remand this case to the Supreme Court, New York County, for a full hearing as to any claimed violations of defendant’s rights through the eavesdrops which he has standing to challenge. Except for this the judgment of conviction should be affirmed.

 Morton testified that when he protested Morhouse’s terms, pointing out that Epstein was to he paid $50,000, Morhouse simply remarked “ That’s a separate deal. That’s not related to this * * * you handle that yourself.” Berger, also present at this conversation, recalled Morhouse saying, “ That is what I want, I’ve got to be paid mine. Mr. Epstein’s is his deal. My deal is my deal. * * * That’s the way it has got to be.”