### (June 2, 1970)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. BOBBY CONN CRABTREE, Appellant.— STALEY, JR., J. Appeal from a judgment of the County Court of Tompkins County, rendered on February 3, 1969, upon a verdict convicting defendant of the crimes of attempted robbery in the first degree, attempted grand larceny in the third degree, illegal possession of a weapon as a felony, and conspiracy in the second degree. On Tuesday, June 18, 1968

Bobby Crabtree, the defendant herein, Lloyd Couliette, Margaret McIntyre and Joanne Reinartz arrived in Ithaca, New York, after having driven there from Orlando, Florida. On June 19, 1968 Lloyd Couliette was shot as he attempted a holdup at the Plaza Liquor Store. The gun he used in his attempt was subsequently discovered in a heater in a tourist cabin which had been rented by defendant. Defendant was subsequently indicted and charged with the crimes of which he was convicted. The charges were based on the theory that defendant conspired with and aided and abetted Couliette in the attempted holdup of the liquor store. Couliette and McIntyre testified for the People, and defendant testified in his own behalf. Couliette testified that he had obtained the gun used from defendant; that on June 19, 1968, while they were at the Clover Club, defendant suggested that they rob the liquor store; that he borrowed a brown stocking from Joanne Reinartz; that at about 11 o'clock they were both drunk, and defendant suggested it again; that he showed defendant the stocking who told him to put it on his head; that they then drove to the Derby Bar in a car driven by defendant where they ordered a drink; that Couliette then left the Derby Bar by the rear door, and proceeded to the liquor store where he was shot by the proprietor; that he then returned to the Derby Bar and told defendant that he had been shot; that they left the bar together through the front door with defendant assisting him to the car; that thereafter defendant pulled him from the car, took the gun and his wallet and left him at a car lot; that he dragged himself from the car lot to the road where he was discovered by passersby who called the police. Margaret McIntyre testified that on the evening of the holdup she and defendant met her cousin Robert J. Morusty at the Derby Bar; that they then drove to the Clover Club in her car where they met Couliette and Joanne Reinartz; that around 11:30 P.M. defendant asked her to loan him her car; that defendant left with Couliette; that a short time later defendant returned to the Clover Club alone; that they then drove Morusty back to his car at the Derby Bar, and on their way back to the Clover Club she saw someone lying on the side of the road, and defendant said "It's Lloyd. He's been shot"; that they went back to the Clover Club and got Joanne and took her back but Couliette was gone; that they went back to the cabins; that she saw a wallet on the floor of the car as she got out, and defendant told her it was Lloyd's; that they stayed at the cabin that night; that the next day she was driving her car accompanied by defendant when she was stopped by the police and could not produce the registration, and was asked to go to the police station; that while they were alone in the police station, defendant told her where the gun and wallet were in the cabin and to get rid of them; that when she left the police station, she went back to the cabin to get her things, but did not look for the gun and wallet; that when she went to City Court to sign her statement, defendant asked her if she had gotten rid of the gun and wallet and she told him no. Marian Freeman, the owner of the cabins, testified that on June 18, 1968 around 6 o'clock defendant rented two cabins for four people, registering under the name of James H. Hall, paying for one night; that, shortly after midnight on the morning of June 20, defendant knocked at her door and asked to rent a cabin; that on the evening of the 20th defendant paid the rental for the 19th and 20th; that after 5 o'clock on the 21st she went into the cabin to clean and noticed a wallet on top of the medicine chest; that she then changed her mind about cleaning and left; that later she decided to change the sheets and returned to the cabin; that while doing this, she noticed that the heater door was ajar, whereupon she looked in and saw a gun; that she called the Sheriff's Department; that the Ithaca police arrived and she showed them where the gun and wallet were which the police removed.

Defendant testified that on June 19 he and his companions were drinking at the Clover Club; that at about 9:30 P.M. he and Margaret McIntyre left the Clover Club to pick up her cousin at the Derby Bar; that they returned to the Clover Club at about 10:00 P.M.; that there was never any discussion about the liquor store; that he knew nothing about a woman's stocking; that Couliette and defendant left the Clover Club at about 11:30 P.M. and went to the Derby Bar; that they ordered a drink and were there about 5 or 10 minutes when Lloyd got up and went, he thought, to the rest room in the back; that Lloyd returned coming in the back door, and said "I am shot", and defendant said "I don't believe you"; that defendant did not see any blood; that defendant paid for the drinks and went outside; that when he went outside he did not see Lloyd; that he drove to the Clover Club and drove McIntyre and Morusty back to the Derby Bar so Morusty could pick up his car; that defendant and McIntyre drove back to the Clover Club and, on the way, saw a body in the road which he told her was Lloyd, and that he had been shot; that they later drove back to the cabins; that he did not inspect the car, did not see any blood stains, and did not see a gun in the car; that he had no idea how the gun got into his cabin; that McIntyre found a wallet in the back seat of the car that belonged to Lloyd and gave it to him. On cross-examination, defendant testified that he never saw the gun except in the car on the way from Florida, that he never owned a gun; that he never saw the wallet; that he never told McIntyre to get rid of the gun; that, although he drove along the same road where Lloyd was found when he first left the Derby Bar, he did not see him running or walking down the road. Defendant first contends that the People failed to prove a prima facie case as to the charges of attempted robbery, attempted grand larceny and conspiracy in that the only testimony in support of the People's case on these charges was elicited from an alleged accomplice, Couliette, and his testimony was not corroborated by any of the People's witnesses. Evidence is sufficiently corroborative within the meaning of section 399 of the Code of Criminal Procedure where nonaccomplice testimony "tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the accomplice is telling the truth." (*People* v. *Dixon,* 231 N. Y. 111, 116; *People* v. *Morhouse,* 21 N Y 2d 66; *People* v. *Fiore,* 12 N Y 2d 188.) "The corroboration need not, as must circumstantial evidence, lead exclusively to the inference of the defendant's guilt. As this court has noted, even 'Matters in themselves of seeming indifference * * * may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between the defendant and the crime.' (*People* v. *Dixon,* 231 N. Y. 111, 116–117.) " (*People* v. *Morhouse, supra,* p. 74.) Defendant borrowed McIntyre's car to go with the accomplice to the Derby Bar. Defendant's own testimony placed him in the Derby Bar in a position facing the rear door where he saw the accomplice returning through the rear door of the Derby Bar, contrasting with his prior testimony that Lloyd went, he thought, to the rest room in the back. Defendant's testimony of his conversations with McIntyre plus her testimony of defendant's activities on the night of the crime, together with the finding of the gun and wallet in defendant's cabin confirm the validity of the accomplice's story. On the evidence, the jury could reasonably be satisfied that the accomplice, Couliette, was telling the truth; that an agreement to rob the liquor store was made at the Clover Club; that defendant borrowed the car for that purpose and proceeded to the Derby Bar where defendant was to await the return of the accomplice from the liquor store. The fact that the borrowing of the car and driving to the Derby Bar is equally consistent with innocence as with guilt is of no moment, since all that is required

is that the nonaccomplice evidence fairly tends to connect defendant with the crime so that the jury can be reasonably satisfied that the accomplice is telling the truth. (*People* v. *Morhouse, supra.*) Defendant also contends that the People's proof was insufficient to support the conviction of illegal possession of a weapon in that the count in the indictment charged the possession of the gun in the City of Ithaca, and the gun was found in the Town of Newfield. The testimony established that Couliette had the gun in the liquor store; that defendant took it from Couliette in the City of Ithaca; that it was found in the cabin in Newfield. This evidence sufficiently connects defendant with possession of the gun in Ithaca, and it was within the province of the jury to disbelieve and reject the contradictory testimony of defendant. Defendant's contention that the verdict was against the weight of the evidence and that the presumption of innocence was not overcome beyond a reasonable doubt, is without merit. This contention is based on the premise that Couliette was an unreliable witness. The question of credibility is, however, a question of fact for the jury to determine, and on this record we see no basis for disturbing their determination in that regard. Defendant also contends that he did not receive a fair trial asserting that the gun found in the cabin should have been suppressed since there was no proof that he had given consent to any entry into the cabin. The proprietor of the cabins, however, admitted the police to the cabin at a time when the cabin was no longer occupied and the defendant had not paid for its use. There is no evidence that the defendant intended to occupy the cabin on that day, or had paid for its use, or was actually a tenant on that day by agreement with the proprietor. The court properly denied the motion to suppress. We have examined the remaining arguments raised by appellant and find them to be without merit. Judgment affirmed. Herlihy, P. J., Aulisi, Staley, Jr., Cooke and Sweeney, JJ., concur in memorandum by Staley, Jr., J.