People v Maull (2023 NY Slip Op 04022)

People v Maull

2023 NY Slip Op 04022

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, BANNISTER, AND OGDEN, JJ.

404 KA 20-01608

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
GARY MAULL, DEFENDANT-APPELLANT. 

JONATHAN ROSENBERG, BROOKLYN, FOR DEFENDANT-APPELLANT.

 Appeal, by permission of a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department, from an order of the Cattaraugus County Court (Ronald D. Ploetz, J.), dated September 24, 2020. The order denied the motion of defendant to vacate a judgment of conviction pursuant to CPL 440.10. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law and the matter is remitted to Cattaraugus County Court for a hearing pursuant to CPL 440.30 (5) in accordance with the following memorandum: Defendant appeals by permission of this Court from an order summarily denying his motion pursuant to CPL 440.10 seeking to vacate a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [1]). In August 2014, a victim was killed by a single gunshot to the head. DNA evidence recovered at the crime scene was linked to defendant and the codefendant, Thomas Hall (Turtle). The People's theory of the victim's death was that defendant shot and killed the victim in retribution for the victim having purportedly informed on defendant. At the time of the killing, defendant already faced charges in connection with a June 2013 burglary and assault (2013 case). After the victim's death, but before defendant was indicted for killing the victim (murder case), he was arrested for bail jumping in connection with the 2013 case.
While defendant was being held at the Cattaraugus County Jail on the bail jumping charges, he spoke on the phone with the attorney representing him in the 2013 case. Unbeknownst to defendant or the attorney, however, at least three of their phone calls from jail were intercepted and eavesdropped on by the Cattaraugus County Sheriff's Office, including a detective who was the lead investigator in the murder case, and who ultimately testified at defendant's trial in that case. The detective prepared notes memorializing the contents of the intercepted calls, which occurred on September 29, and October 7 and 16, 2014. During those calls, defendant and his attorney seemingly discussed the murder case. For instance, in the first call, the attorney asked defendant "who [T]urtle was" and said that "he [would] try to find out what [T]urtle [was] in [jail] for." In the second call, defendant and his attorney discussed "[h]ow the murder ties in," indicated that Turtle "was pissed," and that he had "very hard feelings" because money was being hidden from him. In the third call, defendant and his attorney discussed the bail jumping charges, and defendant indicated that someone would be testifying for him at an upcoming, yet unspecified, trial. The references to Turtle in the intercepted calls are significant because, by the time the first call occurred, Turtle had already provided law enforcement with a statement implicating defendant in the murder case.
Defendant was indicted in the murder case after the eavesdropping occurred, and was ultimately convicted, after a jury trial, of, inter alia, murder in the second degree (Penal Law § 125.25 [1]). At sentencing, defendant informed County Court about law enforcement's eavesdropping, revealing that trial counsel had learned about the eavesdropping when Turtle's attorney shared with him the detective's notes, which Turtle's attorney had received as Rosario material. Trial counsel stated that, because of the victim's killing, "[t]here may have been a reason [for law enforcement] to listen to [the intercepted] calls," and explained that he chose not to use the eavesdropping as part of the defense because he "didn't think [the [*2]eavesdropping] was relevant" to the murder case. In response, the prosecutor stated that law enforcement is "not even able to access legal phone calls, none of us are . . . We can't [access those calls] under the software." The court took no action with respect to the eavesdropping allegations.
On direct appeal, we modified the judgment with respect to the sentence imposed and otherwise affirmed the judgment and, as relevant here, concluded that "the record [was] insufficient to establish that defendant's trial was affected by an alleged violation of defendant's right to counsel on the ground that law enforcement officers listened to at least three phone calls between defendant and [his attorney], or that [trial] counsel was ineffective for failing to seek a hearing on that matter" (People v Maull, 167 AD3d 1465, 1468 [4th Dept 2018], lv denied 33 NY3d 951 [2019]). We characterized the eavesdropping allegations as "alarming," but nonetheless noted that "the appropriate vehicle for challenging that conduct is a CPL 440.10 motion inasmuch as defendant's contention[s] concern[] matters outside the record on appeal" (id.).
Thereafter, defendant moved to vacate the judgment pursuant to CPL 440.10—both pro se and, subsequently, through assigned counsel (defense counsel)—on the grounds that, inter alia, he was deprived of his right to counsel due to the eavesdropping, and that trial counsel was ineffective by failing to take any action after learning about law enforcement's conduct. Among other things, defendant requested a factfinding hearing to ascertain whether any information gleaned from the eavesdropping was used by the People to develop and support the theory of the murder case at trial. Defendant now appeals from an order summarily denying the CPL 440.10 motion and concluding that defendant waived his entitlement to a factfinding hearing.
Initially, we conclude that the court erred to the extent that it determined that defendant waived his entitlement to a factfinding hearing. "Waiver is the voluntary and intentional relinquishment of a known right; knowledge and intent are essential elements and [a]t the very least the record should reflect an advised and knowing waiver entered into freely and voluntarily" (People v Suttell, 109 AD2d 249, 252 [4th Dept 1985], lv denied 66 NY2d 767 [1985] [internal quotation marks omitted]; see People v Cox, 71 AD2d 798, 798 [4th Dept 1979]; see generally Johnson v Zerbst, 304 US 458, 464 [1938]). Here, nothing in the record supports the court's conclusion that defendant waived a factfinding hearing on the CPL 440.10 motion. In both his pro se and counseled motion papers, defendant expressly requested a factfinding hearing, with defense counsel stating that a hearing was needed to ascertain if and how any private information obtained by law enforcement through eavesdropping was used in the development of the People's trial theory. Indeed, at no time during oral argument on the motion did defendant expressly waive or rescind his request for a hearing, and the court conducted no colloquy with defendant to ensure that he was voluntarily and intentionally agreeing to such a waiver.
Instead, the court's ultimate conclusion that defendant waived the factfinding hearing is based on its insupportable interpretation of fleeting comments made by defense counsel at oral argument—i.e., that "the court doesn't even need a fact-finding hearing" and that a "hearing is [not] even necessary." Viewed in proper context, however, it is abundantly clear that defense counsel's statements denying the need for a hearing were mere rhetorical hyperbole, not an express and intentional waiver of such a hearing. The obvious thrust of defense counsel's argument was that the evidence contained in the motion papers was of such strength and quality that defendant had already met his burden on the motion. Supporting the argument that defense counsel's statements were not an intentional waiver, we note that defense counsel additionally stated at oral argument that a hearing should nonetheless be held "if the [c]ourt thinks that it needs a hearing," and—crucially—that she "certainly would think that [a hearing] would be better than just denying the motion." In short, nothing about defense counsel's statements at oral argument can be construed as an express waiver of the hearing. Given that conclusion, the court erred in determining that defendant waived the hearing by remaining silent during defense counsel's aforementioned remarks. Moreover, we observe that defendant's silence—particularly in light of defense counsel's equivocal remarks—cannot be construed as a "voluntary and intentional relinquishment of" his entitlement to a hearing (Suttell, 109 AD2d at 252 [emphasis added and internal quotation marks omitted]).
We further conclude that the court erred in summarily denying the motion without conducting a factfinding hearing with respect to defendant's deprivation of the right to counsel [*3]and ineffective assistance of counsel contentions. "On a CPL 440.10 motion pursuant to subdivision (1) (h), the burden is on defendant to demonstrate that [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (People v Gross, 26 NY3d 689, 693 [2016] [internal quotation marks omitted]). When a CPL 440.10 motion is made, a hearing to develop additional background facts is not "invariably necessary" (People v Satterfield, 66 NY2d 796, 799 [1985]; see generally CPL 440.30 [5]). To be entitled to a hearing, defendant "must show that the nonrecord facts sought to be established [at a hearing] are material and would entitle him to relief" (Satterfield, 66 NY2d at 799). We review a court's summary denial of a CPL 440.10 motion for an abuse of discretion (see People v Samandarov, 13 NY3d 433, 436 [2009]).
On this record, the court abused its discretion in denying the motion without a hearing because there is ample evidence establishing that a factfinding hearing is necessary to determine whether law enforcement's eavesdropping violated defendant's right to counsel. It is well settled that "the fundamental right to counsel in a criminal case includes 'the right to consult counsel in private, without fear or danger that the People, in a criminal prosecution, will have access to what has been said' " (People v Gamble, 18 NY3d 386, 396 [2012] [emphasis added], rearg denied 19 NY3d 833 [2012], quoting People v Cooper, 307 NY 253, 259 [1954]). To that end, the courts "have often condemned, without reservation, any intrusion into private communications between counsel and client" (People v Pobliner, 32 NY2d 356, 369 n 2 [1972], rearg denied 33 NY2d 657 [1973], cert denied 416 US 905 [1974]; see Glasser v United States, 315 US 60, 76 [1942]; Matter of Fusco v Moses, 304 NY 424, 433 [1952]). Indeed, "[t]hat right, based as it is on a fundamental principle of justice, must be protected by the trial judge" (People v McLaughlin, 291 NY 480, 482 [1944]; see People v Hollmond, 191 AD3d 120, 138 [2d Dept 2020]). Nonetheless, granting a CPL article 440 motion and vacating the judgment of conviction is not automatically required where the court concludes that there has been an intrusion on a defendant's right to private consultation with defense counsel. To warrant vacatur of the judgment, the court must determine "whether the People's evidence on defendant's trial was 'tainted' by such improper eavesdropping" (People v Morhouse, 21 NY2d 66, 77 [1967]; see also Pobliner, 32 NY2d at 369; see generally Weatherford v Bursey, 429 US 545, 552 [1977]).
Here, it is undisputed that law enforcement eavesdropped on at least three of defendant's phone calls with the attorney representing him in the 2013 case. Moreover, it is evident from the detective's notes that defendant and his attorney discussed aspects of the murder case during the intercepted calls at a time when defendant was already a suspect in the murder investigation. As we observed on direct appeal, law enforcement's conduct in this regard was "alarming," and remains so (Maull, 167 AD3d at 1468). Still, the operative question for purposes of defendant's entitlement to vacatur of the judgment of conviction is whether the eavesdropping on defendant's conversations with his attorney "tainted" the People's evidence at trial (Pobliner, 32 NY2d at 369; see Morhouse, 21 NY2d at 77). Although the evidence in support of the motion does not "conclusively substantiate[] by unquestionable documentary proof" that vacatur is required due to a violation of defendant's right to counsel (CPL 440.30 [3]), it is nonetheless suggestive of that fact. Specifically, we observe that the detective's notes about the phone calls create a strong inference that he was one of the individuals listening in. Thus, there is a question whether the eavesdropping tainted the People's case inasmuch as the detective was the lead investigator in the murder case, and ultimately testified at trial on the People's behalf. At the very least, a hearing on this issue could involve obtaining testimony from the detective to ascertain the circumstances and scope of the eavesdropping, and whether it led to evidence that was introduced at trial. Further, given the timing of the eavesdropping relative to the indictment—i.e., the calls were intercepted before defendant was charged in the murder case—a hearing is necessary to ascertain whether the People's decision to seek the indictment was influenced by what law enforcement learned from the intercepted calls. Moreover, the purported impossibility of the eavesdropping by law enforcement—as the People expressly professed at sentencing—plainly raises factual questions about how, precisely, law enforcement was able to eavesdrop on the phone calls in question, and whether there were additional eavesdropping instances involving defendant and his counsel. In short, this is precisely the type of case where a factfinding hearing is appropriate to fully flesh out the seriously concerning allegations made by defendant.
Additionally, we conclude that a factfinding hearing is warranted to consider whether trial counsel was ineffective in failing to take any steps in response to learning about the [*4]eavesdropping. In evaluating defense counsel's performance, we consider whether, "viewed in totality" it constituted "meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Turner, 5 NY3d 476, 480 [2005]). "A defendant advancing an ineffective assistance of counsel claim must 'demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings' " (People v Hogan, 26 NY3d 779, 785 [2016]; see People v Benevento, 91 NY2d 708, 712 [1998]; People v Rivera, 71 NY2d 705, 709 [1988]). "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (People v Caban, 5 NY3d 143, 152 [2005]).
Here, defendant alleges that trial counsel was ineffective by failing to respond at all to the revelations about law enforcement's eavesdropping. At sentencing, trial counsel admitted to knowing about the eavesdropping, but indicated, inter alia, that he did not incorporate that into his defense because he deemed the eavesdropping to be irrelevant to the murder case. That statement is belied by the contents of the detective's notes, which clearly show that law enforcement listened while defendant and his attorney discussed aspects of the murder case. As discussed above, defendant's right to counsel was not violated unless he can show that the eavesdropping tainted the People's case (see Pobliner, 32 NY2d at 369). Thus, it would seem incumbent on defense counsel, at the very least, to request a hearing on that issue once he learned about the eavesdropping and saw that some of the intercepted calls pertained to the murder case. In our view, on the record before us, there are seemingly no strategic reasons to justify trial counsel's express refusal to respond to the disclosure of the eavesdropping, and it is unclear why he deemed the intercepted calls irrelevant to the murder case—to say nothing of his statement suggesting that law enforcement was justified in eavesdropping. Thus, we conclude that there are "sufficient questions of fact [on this record] as to whether [trial counsel] had an adequate explanation for his alleged deficiencies" (People v Zeh, 22 NY3d 1144, 1146 [2014]; see People v Williams [appeal No. 2], 175 AD3d 980, 982 [4th Dept 2019], lv denied 34 NY3d 1020 [2019]), and defendant is therefore entitled to a hearing on the ineffectiveness contention as well (see generally People v Pendergraph, 170 AD3d 1630, 1632 [4th Dept 2019]). Consequently, we reverse the order and direct that the court conduct a factfinding hearing on the motion with respect to defendant's deprivation of the right to counsel and ineffective assistance contentions to the extent that they pertain to the eavesdropping allegations.
Finally, we note that the Cattaraugus County District Attorney failed to file a brief in opposition to this appeal and therefore failed "to perform [her] duty to the people of [her] county" (People v Coger, 2 AD3d 1279, 1280 [4th Dept 2003], lv denied 2 NY3d 738 [2004] [internal quotation marks omitted]; see generally County Law § 700 [1]; People v Herman, 187 AD2d 1027, 1028 [4th Dept 1992]). The District Attorney is obligated to file a brief in opposition "unless the appeal is from a judgment which [s]he concedes should be reversed" (Coger, 2 AD3d at 1280 [internal quotation marks omitted]). No such concession has been made in this case.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court