Steve ROBINSON, Petitioner,

v.

Charles SCULLY, Superintendent of Green Haven Correctional Facility, Respondent.

No. 81 Civ. 1610 (RLC).

United States District Court, S. D. New York.

Dec. 15, 1981.

David Steinberg, Poughkeepsie, N. Y., for petitioner.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondent; Tyrone Mark Powell, Asst. Atty. Gen., New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is a petition for a writ of habeas corpus brought by Steve Robinson, an inmate at the Green Haven Correctional Facility in Stormville, New York. Simply stated, Robinson claims that his resentence after a successful appeal constituted an increase in punishment not based upon his conduct after the original sentencing. Petitioner argues that such an increase is a denial of due process of law in violation of the fourteenth amendment.

BACKGROUND FACTS

On June 12, 1972, in New York Supreme Court, New York County, petitioner pled guilty to grand larceny in the third degree. Judge Leff continued Robinson on parole pending sentencing on August 8, so that he could attend a drug treatment center. Robinson failed to appear at that scheduled hearing, and, on September 29, he was arrested and charged with the robbery and murder of a Columbia Law School professor on September 20.

In light of this atrocious violation of parole conditions, Judge Leff imposed the maximum sentence of four years for grand larceny in the third degree. During the October 25 sentencing proceeding, Robinson's motion to withdraw his guilty plea was summarily denied. On appeal, the conviction was reversed and remanded for a hearing on the motion to withdraw. *People v. Robinson*, 44 A.D.2d 813, 355 N.Y.S.2d 425 (1st Dept. 1974).

Robinson later entered a guilty plea to first degree robbery to satisfy the second pending indictment and, on September 19, 1974, was sentenced to a term of imprisonment between 8⅓ and 25 years. Since no valid sentence was outstanding, the court did not specify whether this term was to run consecutive with or concurrent to any time to be served on the original larceny count.

After a hearing before Judge Klein on April 14, 1975, petitioner's motion to withdraw his plea was denied upon findings that his claim of improper assistance of counsel was unbelievable and that he fully understood the import of his plea. Fifteen days later, Robinson was resentenced by Judge Leff to the same indeterminate term not to exceed 4 years, but with the additional specification that it was to run consecutive to the period of confinement imposed on the robbery conviction. In rationalizing his sentencing decision Judge Leff noted Robinson's previous exploitation of the court's leniency, the esteemed status of the murder

victim and the insincerity of petitioner's attempt to revoke his original guilty plea. Hearing Transcript at 9–11.

Robinson's conviction upon the resentence was affirmed by the Appellate Division. *People v. Robinson*, 61 A.D.2d 1147, 399 N.Y.S.2d 959 (1st Dept. 1977). Petitioner's papers on that appeal advanced generally the argument that the consecutive sentence was improper because it was based on the eminence of Robinson's second victim.

Robinson's final attempt to gain redress in state court took the form of a motion, pursuant to N.Y.Crim.Proc.Law § 440.20(2), to set aside the consecutive sentence provision as illegally imposed. The affidavit and memorandum filed in support thereof were nearly identical to those submitted with the instant habeas petition. Emphasizing N.Y. Crim.Proc.Law § 440.20(2), Judge Leff denied the motion because the issue of the sentence's validity was raised and decided on the merits on direct appeal. *People v. Robinson*, Indictment No. 1202–72 (Sup.Ct. N.Y.Co. Dec. 4, 1980). In reaching this conclusion, Judge Leff quoted from petitioner's brief to the Appellate Division to establish that while a specific due process argument was not presented therein, Robinson had made assertions sufficient to indicate that the federal constitutional issue necessarily was considered by that court. *Id.* at 2–3. The First Department denied permission to appeal from Judge Leff's order, finding "no question of law or fact presented which ought to be reviewed." *People v. Robinson*, Certificate Denying Leave M–5179 (1st Dept. Jan. 6, 1981).

Robinson filed a petition for a writ of habeas corpus on March 12, 1981. The petition was opposed on respondent's behalf by the Attorney General of the State of New York. In an effort to focus more sharply the critical issues in this case, oral argument was heard on November 6, 1981, and supplemental briefs were filed by both parties within the following two weeks.

DETERMINATION

I

The state's initial challenge to Robinson's habeas action is that such a proceeding is barred by his failure to present his claims expressly in constitutional terms either at the time of his resentencing or on direct appeal. Respondent cites petitioner's failure to mention the federal or constitutional bases of his claim and the lack of any reference to the Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), upon which he now relies extensively.

Respondent invokes the forfeiture doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) as applied by *Forman v. Smith*, 633 F.2d 634 (2d Cir. 1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1981), in support of its waiver claim. *Sykes* established the principle that when the petitioner's failure to comply with a state trial practice requirement constituted a waiver of his federal claims under state procedural regulations, federal habeas review of the state conviction is barred unless there is a showing of cause for the noncompliance and actual prejudice resulting from the alleged constitutional violation. 433 U.S. at 84–7, 97 S.Ct. at 2505–6. In *Forman*, the Second Circuit applied the "cause and prejudice" standard to a situation in which petitioner was found by the state court to have forfeited his sixth amendment claim by failing to present it on direct appeal.

Although the state submits that *Forman* is dispositive of the case at bar, it requires another extension of *Sykes'* logic to attain the result sought here. There is no state procedural rule or practice mandating forfeiture of petitioner's claims not made at resentencing or on direct review; no statute empowers a New York court to bar a defendant's constitutional claims merely for his failure to raise them before seeking state collateral relief. Therefore, in effect, respondent now seeks a determination that regardless of local rules of procedure, whenever an accused fails explicitly to allege a constitutional violation through the direct appellate process, that issue is not assertable via the habeas writ. A closer

comparison between *Forman* and the instant case makes this distinction more vivid.

■ After being convicted of second degree murder and pursuing an unsuccessful direct appeal, Forman applied under N.Y. Crim.Proc.Law § 440.10 for an order vacating the judgment against him. His application was denied pursuant to N.Y.Crim. Proc.Law § 440.10(2)(c) because his sixth amendment claim was not, but could have been, raised on direct appeal. New York law provides for the forfeiture of certain federal claims for failure to present them on direct appeal, and in *Forman*, a state court had unequivocally invoked such a forfeiture. 633 F.2d at 636–7 & n.5; *see also Wright v. Bombard*, 638 F.2d 457, 459 (2d Cir. 1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1400, 67 L.Ed.2d 370 (1981). When federal claims are waived under New York law, habeas relief is unavailable. 633 F.2d at 640; 638 F.2d at 460.

Robinson's resort to state collateral review was based on a different provision of New York law. After the First Department affirmed Judge Leff's resentence, petitioner moved to have the consecutive term arrangement set aside as contemplated by N.Y.Crim.Proc.Law § 440.20. This section, unlike the collateral review provision relating to judgments involved in *Forman*, does not contain a procedural forfeiture clause. Instead, it instructs the court to deny the motion if the sentence's alleged illegality was already raised and determined on the merits on appeal. § 440.20(2). In denying petitioner's motion, Judge Leff specifically rested on this subsection; he found that Robinson's contention that the consecutive sentence was excessive and invalid, while more precisely phrased in his post-judgment motion, was the same question that had been raised and decided on direct appeal. Given their different procedural histories and statutory bases it is impossible to view

*Forman* as controlling the fate of Robinson's petition. Therefore, the court must make an independent determination as to the applicability to the present circumstances of *Sykes'* cause and prejudice formula.

■ Extending the *Sykes* analysis to the circumstances at bar would not serve the interests underlying a waiver rule. The *Forman* court found three of the four factors relied upon in *Sykes* to show that non-compliance at trial with a state procedural requirement precludes federal habeas review equally applicable to the nonobservance of state appellate procedures. 633 F.2d at 639–40. Thus, considerations of comity, accuracy and trial integrity mandate federal tolerance of state statutes which specifically enforce procedural forfeiture—comity in that the state has an interest in avoiding federal circumvention of its appellate procedures, accuracy of fact-finding afforded by the comparatively early opportunity for state court remand to develop previously unexplored areas of evidence, and integrity stemming from the removal of the potential for abuse created if attorneys can attain tactical advantages through confounding state processes. *Id.*

■ The most glaring reason for refusing to apply cause and prejudice analysis to the present case is the complete absence of the comity factor highlighted in *Sykes* and *Forman*. *See* 433 U.S. at 88, 97 S.Ct. at 2507; 633 F.2d at 639–40. As set forth above, this case is unique in that respondent has identified no state procedural rule broken by petitioner, and correspondingly, no state court ruling that Robinson has forfeited his federal claims. A § 440.20 motion to vacate is automatically defeated only if the controlling issues were raised and decided on direct appeal; there is a substantive, but not a procedural bar to this avenue of state collateral relief.[1] Respect for rules promul-

---

1. Judge Leff expressly invoked § 440.20(2) in denying Robinson access to state collateral review. He found that petitioner had in fact, albeit inartfully, presented his due process claim for consideration by the First Department. Assuming *arguendo* that Judge Leff's disposition of petitioner's motion is more am-

biguous than is readily apparent, it remains clear that it was not procedurally barred.

The Second Circuit has not gone so far as to rule that, absent an explanation, state court denials of post-conviction relief always imply that decision on the merits was foreclosed by procedural imperfections. *See Albuquerque v.*

gated by the states certainly does not require federal courts to create procedural barriers not envisioned by state law or regulation. The *Sykes* default doctrine, arising as it does from the immunity from habeas review afforded state decisions resting on adequate and independent state grounds, *see Sykes, supra,* 433 U.S. at 81–2, 97 S.Ct. at 2503–04, cannot embrace respondent's apparent contention that, regardless of local regulations, *all* failures to raise constitutional points on direct appeal destroy federal habeas jurisdiction.

The other two *Sykes* factors found generally applicable in *Forman* to direct appeals apply with less force, if at all, to appeals of sentences. Concern about accuracy is alleviated by the uselessness even on direct appeal of remand for further fact-finding. The propriety of Robinson's consecutive sentence was and is purely a legal matter, not one for which the passage of time risks loss or impairment of crucial evidence. Similarly, it is difficult to discern the opportunity, in a direct appeal of a resentence, for the type of "sandbagging"—seeking a not-guilty verdict at trial while reserving constitutional claims for a habeas remedy if the initial gamble is a loser—that motivated the inclusion of the trial integrity element in the *Sykes* calculus. 433 U.S. at 89, 97 S.Ct. at 2507.

This review of the origins of the cause and prejudice standard, as well as the notion of waiver in general, makes clear that no forfeiture bars habeas relief in this case.

Since respondents concede that Robinson has exhausted his state remedies, the merits of his substantive claim must now be weighed.

## II

The substance of Robinson's claim is that the imposition of consecutive terms upon resentencing constituted a violation of due process under the standards set forth in *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Petitioner has established that the actual effect of consecutive rather than concurrent terms was to extend his minimum mandatory confinement prior to parole eligibility by 21½ months and to increase his maximum term of imprisonment by 26½ months. *See* N.Y. Penal Law § 70.30(1)(a), (b). There is no serious dispute over petitioner's mathematics.

■■■ The state initially asserts that petitioner's claim, in that it relates to sentencing, is not cognizable in a habeas proceeding. But, the cases cited in support of the proposition that such matters are reserved to state discretion involved either challenges to the application of sentencing statutes, *see Glucksman v. Birns,* 398 F.Supp. 1343, 1352 (S.D.N.Y.1975) (Ward, J.), or complaints about the discrepancy in punishment meted out to codefendants. *See Warren v. Hogan,* 373 F.Supp. 1241, 1246 (S.D. N.Y.1974) (Gurfein, J.). It may be true that cumulation of sentences is a matter of

---

*Bara,* 628 F.2d 767, 772 (2d Cir. 1980). And, this is not a proper case in which to assume that the state court felt that procedural defects precluded decision on the merits since no "well-known rule of trial practice" was breached. *See Taylor v. Harris,* 640 F.2d 1, 2 n.3 (2d Cir. 1981). Instead, again assuming that procedural default arguably occurred, the court would have to determine whether the state court invoked such a bar.

Three factors have been identified as helpful in deciding whether procedural forfeiture occurred: was the federal claim properly presented to the state courts, did the prosecution argue default in state court and did the state court opinions suggest reliance on procedural grounds or on the merits. *Gruttola v. Hammock,* 639 F.2d 922, 929 (2d Cir. 1981). The last two parts of this triad weigh heavily in

petitioner's favor. Upon being presented with detailed constitutional claims in petitioner's application for collateral review, Judge Leff denied the motion because the issue that "the consecutive sentence was invalid, was raised and decided on the second appeal." The First Department, after being notified by the Assistant District Attorney for the County of New York that the motion raised "no more than what had been essentially alleged ... on appeal," denied Robinson permission to appeal further. Robinson's claim that his resentence was excessive and improper due to the addition of the consecutive term also seems to articulate sufficiently the constitutional underpinnings of his attack, but, in any event, the *Gruttola* criteria were clearly met. Undoubtedly, petitioner did not forfeit his federal claims in the eyes of the state courts.

state policy, *see Ramirez v. State of Arizona*, 437 F.2d 119, 120 (9th Cir. 1971), but when such cumulation is ordered upon resentencing after a conviction has been set aside for nonconstitutional error, its legitimacy poses a federal question. *See United States v. Markus*, 603 F.2d 409, 412 (2d Cir. 1979). That the habeas writ is well-suited to remedy due process violations stemming from penalizing successful criminal appellants with harsher sentences is manifest from *Pearce*, itself brought on by petition for the writ. 395 U.S. at 713, 89 S.Ct. at 2074.

■ In *Pearce*, the court considered the "broad[ ] problem of what constitutional limitations there may be upon the general power of a judge to impose upon reconviction a longer prison sentence than the defendant originally received." 395 U.S. at 719, 89 S.Ct. at 2077. There is no absolute constitutional prohibition of stiffer punishment upon resentencing; a trial judge may not do so, however, out of vindictiveness against a defendant who has successfully attacked one conviction. Instead, the judge must state affirmatively the reasons for such action, *id.* at 725–6, 89 S.Ct. at 2080–1, and "[t]hose reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726, 89 S.Ct. at 2081.

At its core, *Markus* involved a situation much like that involved in the instant case. After a successful motion to vacate the judgment of conviction on two counts in his original indictment, Markus later pled guilty to a superceding indictment. A mixture of concurrent and consecutive terms among his several pending convictions had resulted in a total prospective confinement of 15 years at the time of the first sentencing on these counts. 603 F.2d at 411. By the time he was resentenced on the same counts, he had accumulated various other federal sentences, and his new term was made consecutive to each of them. *Id.* The Second Circuit tested the validity of this resentence under the *Pearce* standard.

As a threshold matter, the court determined that the "actual effect of the new sentence" was to increase the aggregate term of imprisonment by approximately seven months due to defendant's intervening conviction in a wholly unrelated case. *Id.* at 413. Such an increase in punishment was held invalid because "[i]ntervening convictions of appellant, based upon indictments pending at the time of the original sentencing . . . and upon conduct predating that sentencing, cannot satisfy *Pearce's* exacting requirement." *Id.* at 414. The court removed the consecutive term causing the increase. Given the above rationale, that disposition seems controlling in the case at bar.

Respondent argues that an increase in punishment upon resentence after the withdrawal of a guilty plea falls within the range of discretion left intact by the *Pearce* rule. Without attempting to distinguish *Markus*, respondent invokes another line of cases in support of this proposition. But, these purportedly analogous decisions arose from situations factually dissimilar from the one at bar, and, especially in light of the highly comparable *Markus* circumstances, they are not sufficient to establish conformity with *Pearce* in this case.

■ In *Frank v. Blackburn*, 646 F.2d 873 (5th Cir. 1980), *Pearce* was found completely inapplicable "to post-plea bargain sentencing proceedings." *Id.* at 885. There, varying sentences were the result of critically different types of hearings. Defendant rejected an offer of twenty years confinement in return for a guilty plea and insisted upon going to trial. *Id.* at 875. After conviction by a jury, he was sentenced to thirty-three years. This additional term was upheld on appeal because it resulted not from judicial vindictiveness, but from the judge's ability to appraise more carefully all of the circumstances after a full trial on the merits. *Id.* at 886. The greater knowledge and better understanding acquired by a judge after hearing the full disclosure of the facts at a trial (as opposed to hearing a sterile version when a plea is taken) legitimates higher sentences

after withdrawal of a plea. *United States v. Cunningham*, 529 F.2d 884, 889 (6th Cir. 1976); *United States v. Kienlen*, 415 F.2d 557, 559–60 (10th Cir. 1969). No such enhanced understanding led to Robinson's increased punishment. Judge Leff relied upon the same factors to justify both sentences in this case.

*United States v. Osborne*, 591 F.2d 413 (8th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979), is more closely on point since both sentences arose from pleas. But, a crucial difference between *Osborne* and the case at bar leaves the court unwilling to place Robinson in the exemption carved out from *Pearce*. Osborne was sentenced to six years following guilty pleas to two counts of a ten count counterfeiting indictment. After having those pleas set aside, he received a total of eight years imprisonment upon pleading guilty to all ten counts. *Id.* at 413. In holding that defendant's constitutional rights were not violated, the court focused on the fact that additional offenses were involved at the time of resentencing. *Id.* at 414–5. In fact, *United States v. Floyd*, 519 F.2d 1031 (5th Cir. 1975) was distinguished in *Osborne* solely because it ruled improper a heavier sentence imposed for the *same* offense. *Id.* at 415. Robinson merits the same exclusion from the rule announced in *Osborne*.

 Next, respondent argues that the increased sentence was based upon new data independent of the successful appeal or the intervening conviction. Specifically, the state refers to a fight between Robinson and another inmate and the new evidence of his moral propensities uncovered by Judge Klein's opinion denying withdrawal of the original plea. The justifications for increasing a sentence after a successful appeal must appear on the record along with the factual data supporting the trial judge's action. *Pearce, supra*, 395 U.S. at 726, 89 S.Ct. at 2081. Not only do the reasons cited by Judge Leff not correspond to the motivations ascribed to him by the state's attorney, they also are not constitutionally legitimate.

 Judge Leff affirmatively stated his reasons for treating Robinson harshly: defendant viciously exploited his first parole by leaving his drug treatment program and getting involved in a robbery/murder; the victim of that second crime was "not just an ordinary citizen," but a world renowned law professor, and; at the original sentencing, rather than exhibiting remorse, petitioner used a "ploy" to attempt to withdraw his plea. Transcript of Sentencing Hearing 9–11. This transcript indicates that petitioner's alleged fight in prison was never considered, that his "moral propensities" were known to and considered by Judge Leff at the time of the original sentencing and that Robinson is understandably not "free[ ] of apprehension of . . . a retaliatory motivation on the part of the sentencing judge." *Pearce, supra* at 725, 89 S.Ct. at 2080. Petitioner's fear of judicial vindictiveness is fueled not only by the absence on the record of any identifiable post-sentencing conduct which might excuse his increased punishment, itself a violation of due process, *id.* at 725–6, 89 S.Ct. at 2080–1, but also by Judge Leff's characterization of his appeal as insincere.

Finally, respondent urges the court to fashion a new clarification of the *Pearce* rule to permit trial judges to consider any bad acts performed between the entry of a plea and the actual sentencing as identifiable conduct occurring after the initial sentencing. This suggested proviso is adapted from the holding in *Williams v. Wainwright*, 493 F.Supp. 153, 155 (S.D.Fla.1980), that a new sentence imposed after a violation of probation can be stiffer than the original, the probation offense constituting cognizable intervening conduct. The cases are not analogous, however, because Robinson's parole violation took place before, and was relied upon to justify, the initial sentence. Petitioner received the maximum sentence after his first hearing as a result of his absconding while released to participate in a drug program.

Similarly, respondent's twofold public policy argument is not persuasive. The state asserts that without their suggested

change in the definition of "time of sentencing" criminal defendants will be encouraged to commit additional crimes in the period between their guilty plea and their sentencing. Also, trial judges would be reluctant to free defendants pending sentencing, realizing that they could not take any such crimes into account in resentencing. There is no reason to fear these adverse implications if habeas is granted here. Defendants are not unaccountable for their presentencing behavior since their actions may effect the severity of their punishment on their existing plea and may result in subsequent convictions, both of which happened to Robinson. Judges are also aware of these contingencies and can be presumed to account for them in determining whether to grant bail or parole. Finally, neither judges nor defendants could reasonably condition their decisionmaking on the slim possibility that there will, in fact, be an opportunity for resentencing at which a greater penalty may be imposed upon defendant. Such opportunities only arise when, as here, the original conviction is overturned and an intervening conviction presents the predicate for specifying consecutive terms.

In conclusion, there has been no forfeiture of petitioner's claims [2] which are federal despite being rooted in sentencing matters. Robinson's consecutive term was made possible solely by his intervening conviction for robbery and was imposed because of his activities predating the initial conviction which, in fact, underlay the severity of that term. As such, the increased punishment violates the due process requirements set forth generally in *North Carolina v. Pearce* and applied specifically to intervening convictions in *United States v. Markus*. Therefore, petitioner's sentence should be modified so as to remove the consecutive term provision and make it no more severe than that originally imposed. The writ will issue in 60 days if this correction has not been made.

IT IS SO ORDERED.

2. Given this conclusion, it was unnecessary to consider whether there was cause for any procedural default that might have occurred and whether prejudice resulted. If there was fatal

noncompliance with a state procedural requirement, the court would have to conduct an evidentiary hearing on these issues. *See Forman, supra* at 636–7.