Henry S. RENZI, Petitioner-Appellant,

v.

WARDEN, U.S. PENITENTIARY, TERRE HAUTE, IND., and Attorney General, State of Connecticut, Respondents-Appellees.

No. 776, Docket 84–2333.

United States Court of Appeals, Second Circuit.

Submitted June 11, 1985.

Resubmitted Dec. 23, 1985.

Decided June 9, 1986.

312

Gary D. Weinberger, Asst. Federal Public Defender, Hartford, Conn. (Thomas G. Dennis, Federal Public Defender for the District of Connecticut, of counsel), for petitioner-appellant.

Richard F. Jacobson, Asst. State's Atty., Bridgeport, Conn., for respondents-appellees.

Before FRIENDLY,* OAKES and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Petitioner Henry Renzi seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds that his plea of guilty to a charge of second degree murder was invalid. He claims that he did not knowingly and intelligently waive his rights to confrontation and against self-incrimination, that there was no factual basis for his guilty plea, and that he was not adequately apprised of the elements of second degree murder under Connecticut law. The district court dismissed his petition. Renzi, acting *pro se*, appealed. After we deter-

---

* Due to the death of Judge Henry J. Friendly, this case has been decided by the two remaining members of the panel pursuant to § 0.14 of the Rules of the United States Court of Appeals for the Second Circuit.

mined that the issues he raised could not be decided without a transcript of the habeas corpus hearings in a Connecticut state court, we appointed counsel to secure the transcript and represent him on appeal. We affirm.

Renzi was originally indicted for first degree murder in 1969 after he shot the proprietor of a service station during a holdup. There is no dispute that Renzi was involved in the holdup and fired the fatal bullets. It is also clear that he freely confessed his crime to a number of people after arrest, although the exact number is in dispute.

In the course of negotiations over a plea bargain, the prosecutor agreed to drop the charge from first degree murder, which at the time was punishable by, *inter alia,* death, to second degree murder, which carried a mandatory life sentence but with parole opportunities, to which Renzi would plead guilty.

During the colloquy with the court before his plea, Renzi and his mother, as guardian *ad litem,* were asked a number of general questions regarding the advice of counsel and Renzi's understanding of the charge against him. The answers to these questions in no way suggested that the plea was anything but a voluntary decision made after being fully advised of his rights. However, Renzi did not state on the record that he intended specifically to waive his rights to confrontation and against self-incrimination, nor did the colloquy develop a detailed factual basis for the plea. Finally, Renzi was not told on the record that intent was an element of the crime of second degree murder in Connecticut.

Before filing the present petition, Renzi sought a writ of habeas corpus in the Connecticut state courts. A hearing was held at which his former counsel testified that he had advised Renzi of his right to cross-examine the witnesses against him, although counsel doubted that effective cross-examination could be developed. According to the attorney's testimony, he advised Renzi that he did not have to take the

stand as a witness. He also informed Renzi that conviction of first degree murder was a virtual certainty in light of the fact that Renzi had confessed to thirteen different individuals in prison as well as a to a number of police officers. The fact that these confessions were made somewhat boastfully and without remorse was, in counsel's view, an additional reason for avoiding a trial, which would emphasize this conduct, generate publicity, and perhaps later influence parole officials. Counsel advised Renzi that his best course of action would be to plead to second degree murder and then attempt, through good behavior, rehabilitation, and a showing of remorse, to secure favorable parole treatment. Favorable treatment meant gaining release sometime between 7 and 15 years. Finally, counsel testified that he discussed with Renzi the elements of both first and second degree murder under Connecticut law.

Renzi and his mother also testified. They each based the decision to plead guilty upon defense counsel's absolute guarantee that no more than eight years would be served. Renzi also testified that he was not counseled as to the constitutional rights he would waive by pleading guilty or as to the elements of second degree murder. He admitted that his prison record was not exemplary and included an escape.

The state court declined to issue the writ on the grounds that Renzi had deliberately bypassed an appeal that could have been taken from his plea of guilty. The court stated:

> There is ample evidence on the record in this case to show that the petitioner deliberately bypassed the orderly procedure of a direct appeal in waiting eleven years to bring forth this petition. Improper motive is not the touchstone. [citation omitted]. The petitioner, on advice from counsel, made an intelligent decision in light of all the facts surrounding his situation not to attempt to withdraw the guilty plea. Trial would most likely have resulted in conviction for first

degree murder. It is certainly reasonable to conclude as did counsel, that the witnesses against the defendant would have built a solid record against any early release. Testimony reflects the petitioner's acquiescence in the advice of counsel. The petitioner was as capable as any attorney to make an intelligent choice in foregoing the opportunity to appeal.

█ We do not reach the numerous procedural issues raised by the parties because we conclude that Renzi's guilty plea was valid.[1]

The state court judge clearly found, albeit in connection with a deliberate bypass theory, that Renzi pleaded guilty after being sensibly counseled by his attorney and after weighing the risks of going to trial against pleading guilty to a lesser included offense. The record leaves no doubt that Renzi was guilty. A defendant's guilt of course does not render a guilty plea valid regardless of the circumstances in which it was taken, because even a guilty defendant has the right to put the government to its proof. However, the record also makes clear, and the state court found, that Renzi's plea reflected a calculated decision based on the weight and nature of the evidence against him and the fact that a trial might affect his parole opportunities negatively. The decision was made on the advice of counsel and even in hindsight was eminently sound.

█ The state court judge clearly credited defense counsel's testimony, and discredited Renzi and his mother's account, in her findings with regard to Renzi's deliberate bypass of an appeal. We believe it is implicit in the crediting of the defense counsel's testimony that Renzi was advised of his rights to cross-examine the witnesses

against him and not to take the stand. Even if such an explicit discussion did not take place, however, it was harmless error beyond a reasonable doubt. No amount of discussion of the value of those rights would have affected his decision at the time it was made.

It is also clear that there was at a minimum an overwhelming factual basis for the plea. Indeed, it was the likelihood of conviction based on his own admissions that led to the plea.

█ With regard to whether he was advised of the elements of the offense of second degree murder, Renzi relies heavily upon *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). However, that decision is distinguishable. First, Justice Stevens noted that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," 426 U.S. at 647, 96 S.Ct. at 2258, and stressed the uniqueness of the case before him where the trial judge found as a fact that the element of intent was not explained to defendant. Given that the state court credited defense counsel's testimony in connection with the deliberate bypass theory, we believe that we may presume counsel did tell Renzi that intent was an element of the crime of second degree murder in Connecticut.

█ Second, in *Morgan,* the record clearly indicated that the intent of the accused was a disputed issue. Thus, at the sentencing, Morgan's lawyer told the Court that his client "meant no harm to that lady." 426 U.S. at 643, 96 S.Ct. 2256. In the present case, intent was simply never in issue in light of Renzi's repeated admissions of the crime. Indeed, even now nei-

---

1. We do not address the deliberate bypass issue because the record is not clear that Renzi knew of his right to appeal from a guilty plea and because the state court's findings appear to equate the voluntariness of the plea with a calculated decision not to appeal. Nor do we decide whether the deliberate bypass rule, *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1965), or the later cause and preju-

dice rule, *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 2508, 53 L.Ed.2d 594 (1977), applies to the failure to take an appeal from a guilty plea. *See Mitchell v. Scully,* 746 F.2d 951, 955–56 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985); *Forman v. Smith,* 633 F.2d 634, 640 n. 8 (2d Cir.1980), *cert. denied,* 450 U.S. 1001, 101 S.Ct. 1710, 68 L.Ed.2d 204 (1984).

ther Renzi's *pro se* papers nor the brief submitted by counsel suggest how knowledge that intent was an element could have altered his plea decision. Any error was therefore harmless beyond a reasonable doubt.

Affirmed.