**Jose MATISTA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

No. 95 Civ. 2038 (DNE).

United States District Court, S.D. New York.

May 17, 1995.

Jose Matista, pro se.

## OPINION & ORDER

EDELSTEIN, District Judge:

Petitioner Jose Matista, *pro se*, brings this motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.[1] Petitioner also moves, pursuant to 18 U.S.C. § 3582(c)(2), to modify his sentence.

## BACKGROUND

Jose Matista ("Matista") was convicted, after a jury trial, of one count of conspiracy to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846. The evidence at trial showed that in May 1988, Matista and several other persons conspired to purchase approximately twelve pounds of heroin from undercover agents of the Drug Enforcement Administration ("DEA"). The evidence further demonstrated that Matista's role in the conspiracy was to deliver approximately $400,000 to his co-conspirators immediately prior to the pre-arranged drug transaction.

During the late evening of May 11 and early morning of May 12, 1988, DEA agents observed Matista as he parked his Nissan automobile on Central Park West in Manhattan; Matista's wife, Angela Matista, was a

---

1. In relevant part, § 2255 states:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

*See also* Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 1 advisory committee's note (comparing § 2255 motion with writ of habeas corpus).

passenger in this car. DEA agents further observed the Matistas exit the car and meet two men who were parked nearby in a Toyota. After greeting these men, the Matistas removed two bags from the Nissan. Mr. Matista carried the smaller of the two bags to the Toyota and placed it in the Toyota. Mrs. Matista, with the aid of one of the men she had met moments earlier, carried the larger of the two bags to the Toyota. Thereafter, the Matistas drove away in the Nissan, and the two men drove away in the Toyota. Minutes later, the two men met undercover DEA agents at the pre-arranged location for the drug transaction. These men gave the undercover agents the two bags, which contained approximately $400,000, in exchange for what they believed to be heroin. Thereafter, the Matistas and these men were arrested.

In December 1989, Matista and his co-defendants, including his wife, proceeded to trial. Prior to closing arguments, Matista and his wife fled the country. The jury convicted the Matistas of conspiracy to possess heroin with intent to distribute. This Court sentenced Matista to a 151–month term of imprisonment, followed by a four-year term of supervised release.

On May 13, 1990, Matista was apprehended when he attempted to enter Puerto Rico from the Dominican Republic. Matista was charged with bail-jumping, in violation of 18 U.S.C. § 3146. He pleaded guilty to this charge, and this Court sentenced him to twelve months incarceration.

On three occasions, Matista has sought to challenge his conspiracy conviction. First, Matista appealed to the Court of Appeals for the Second Circuit, which dismissed his appeal because he had fled the jurisdiction during trial. *See United States v. Matista,* 932 F.2d 1055 (2d Cir.1991). Second, Matista brought a motion seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Thereafter, Matista filed a motion seeking to withdraw his habeas corpus motion, and this Court granted Matista's motion to withdraw. Third, Matista brought the instant motion.

In his motion, petitioner contends that his sentence was imposed in violation of the Constitution of the United States because petitioner was denied effective assistance of counsel. Moreover, petitioner contends that his sentence was illegal because, as a matter of law, the evidence at his trial was insufficient to establish that he was a member of a conspiracy.

Petitioner also moves, pursuant to 18 U.S.C. § 3582(c)(2), to modify his sentence.

## DISCUSSION

Petitioner's claim that he was denied effective assistance of counsel is within the scope of § 2255 because his claim alleges that his sentence violates the Constitution of the United States. *See* 28 U.S.C. § 2255. Petitioner's claim that there was insufficient evidence to convict petitioner of conspiracy is also within the scope of § 2255 because his claim alleges that his sentence is illegal.

### 1. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant the right to counsel. As the Supreme Court has noted, "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). The right to counsel protects a defendant's right to a fair trial because "access to counsel's skill and knowledge is necessary to accord defendants ... 'ample opportunity to meet the case of the prosecution.'" *Id.* at 685, 104 S.Ct. at 2063 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275–76, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942)). Because counsel plays such a crucial role, the Supreme Court has recognized that "'the right to counsel is the right to the effective assistance of counsel.'" *Id.* at 686, 104 S.Ct. at 2063 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970)). Thus, if a defendant's counsel fails to render adequate legal assistance, defendant's Sixth Amendment rights are violated. *See id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980)).

The Supreme Court has established a two-part test for determining whether an attorney's representation constitutes ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687, 104 S.Ct. at 2064. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To satisfy the first prong of the *Strickland* test, a defendant must show that "his attorney's performance 'fell below an objective standard of reasonableness.'" *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). The Supreme Court has eschewed articulating a rigid set of standards for determining whether an attorney's conduct is reasonable, stating instead that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

The Supreme Court has, however, explained the method that a federal court should employ in determining whether an attorney's performance was reasonable. The Court has instructed that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). This presumption is necessary because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Further, to prevent a federal court from hindsighting counsel's actions, a court may not use hindsight in evaluating whether an attorney's conduct was rea-

sonable. *See Id.* at 690, 104 S.Ct. at 2066; *Mayo,* 13 F.3d at 533 (citation omitted).

To satisfy the second prong of the *Strickland* test, a defendant must show that his attorney's deficient performance prejudiced his defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. A defendant establishes prejudice by demonstrating that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Zackson,* 6 F.3d 911, 921 (2d Cir. 1993) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068); *see also Claudio v. Scully,* 982 F.2d 798, 803 (2d Cir.1992).

In the instant case, petitioner raises seven claims of ineffective assistance of counsel. Each of these claims is examined in turn.

█ First, petitioner contends that counsel was ineffective because "trial counsel failed to make a request that the defense theory of 'mere association' be read into the jury instructions." (Petitioner's Brief at 7.) Petitioner's contention is meritless for the simple reason that this Court did, in fact, charge the jury regarding the mere-association theory: "Of course, mere association with a conspirator does not make one a member of the conspiracy, nor is knowledge without participation sufficient." (Trial Transcript at 820.) Thus, petitioner has failed to demonstrate that his counsel acted unreasonably, and he has failed to demonstrate that counsel's actions prejudiced petitioner's defense.

█ Second, petitioner claims that counsel was ineffective because counsel should have argued that the DEA agents who testified against petitioner were lying.[2] Petitioner cites various inconsistencies in the DEA agents' testimony to support his contention that the agents perjured themselves. Petitioner's claim is meritless, however, because he has failed to "overcome the presumption that, under the circumstances," his attorney's decision not to argue that the agents were lying "'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct.

---

2. It should be noted that, although defense counsel did not explicitly state that the DEA agents were lying, in his closing statement, defense

counsel did imply that the DEA agents lied in court. (*See* Trial Transcript at 770.)

at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). In the instant case, defense counsel argued that the DEA agents were mistaken in their perceptions and their recollections. Defense counsel's strategic decision to focus on the agents' perceptions was reasonable because the agents observed petitioner at night, from a distance, and from the inside of a car. Defense counsel's decision to challenge the agents' recollections was also reasonable because several of the DEA reports in this case fail to state that Matista carried a bag of money from the Nissan to the Toyota. (Trial Transcript at 398–402, 411, 770.) Counsel has broad discretion to determine what arguments to make in front of the jury, and counsel exercised this discretion in choosing to challenge the agents' perceptions and recollections instead of their truthfulness. Thus, petitioner has not overcome the presumption that defense counsel acted reasonably in choosing not to challenge the agents' truthfulness.

■ Petitioner has also failed to demonstrate that counsel's actions prejudiced petitioner's defense. To demonstrate prejudice, petitioner must show that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Zackson,* 6 F.3d at 921 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). In the instant case, petitioner has merely asserted that if counsel had argued that the DEA agents were lying, the jury's verdict would have been different. Petitioner's bald assertion does not demonstrate that there is any reasonable probability that the result of petitioner's trial would have been different, and thus, petitioner has failed to demonstrate prejudice.

■ Third, petitioner claims that he was denied effective assistance of counsel because petitioner claims that his attorney told an attorney for his wife that "he ... knows that the Matistas are guilty." (Petitioner's Brief at 14 (emphasis removed).) Petitioner claims that his wife's attorney told petitioner's wife about this statement and that petitioner's wife told petitioner about this statement. This statement savages credulity to such an extent that it would be unseemly to consider it in any fashion. Petitioner has not even attempted to make any showing, let alone an adequate one. "In seeking collaterally to attack their convictions under section 2255, defendants bear the burden of establishing by a preponderance of the evidence that they are entitled to relief." *United States v. DiCarlo,* 575 F.2d 952, 954 (1st Cir.1978) (citing *Coon v. United States,* 441 F.2d 279 (5th Cir.), *cert. denied,* 404 U.S. 860, 92 S.Ct. 160, 30 L.Ed.2d 103 (1971)); *see also Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (stating that "*the defendant must show* that counsel's performance was deficient" and that "*the defendant must show* that the deficient performance prejudiced the defense") (emphasis added).

In the instant case, petitioner has not established by a preponderance of the evidence that his counsel did, in fact, state that counsel knew petitioner was guilty. Petitioner bases this claim on his own unsupported assertion, which is double-hearsay. This Court must presume that petitioner's counsel acted reasonably.[3]

■ Fourth, petitioner claims that his counsel was ineffective because counsel should have objected when the Court ex-

---

**3.** Petitioner's allegation—that counsel stated that counsel knew petitioner was guilty—does not warrant an evidentiary hearing. Petitioner bears the burden of showing that he is entitled to an evidentiary hearing. *See DiCarlo,* 575 F.2d at 954. Petitioner's own claim is the only evidence in support of this allegation. Yet, petitioner has no personal knowledge that counsel made this alleged statement. Rather, petitioner claims that petitioner's wife said that petitioner's wife's lawyer said that petitioner's lawyer said that he knew petitioner was guilty. This unsupported double-hearsay statement does not entitle petitioner to an evidentiary hearing.

Moreover, pursuant Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts, petitioner's § 2255 motion shall be dismissed without a hearing "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." In the instant case, it plainly appears from the face of petitioner's motion papers, which have no annexed exhibits, that petitioner is not entitled to relief based on an allegation that is only supported by a double-hearsay statement.

plained to the jury that a particular jury instruction did not apply to petitioner. The Court stated:

> Of course, this instruction does not apply to your consideration of the case against the defendant [sic] Jose Matista and Angela Matista.

(Trial Transcript at 822–23.) This claim is based on petitioner's misreading of the trial transcript. On page 822 of the trial transcript, this Court advised the jury that two of petitioner's co-defendants had stipulated that each of them had the knowledge and intent to purchase heroin: "the defendant [sic] Vargas and Mejia have not placed in issue whether each of them had the knowledge and intent that the government would otherwise have to prove beyond a reasonable doubt before you could find either of them guilty of conspiracy." The instruction that petitioner now challenges explained to the jury that this stipulation did not apply to petitioner and that the government retained the burden of proving beyond a reasonable doubt that petitioner had the knowledge and intent to commit conspiracy. Because petitioner never stipulated that he had the intent to commit conspiracy, his counsel obviously acted reasonably in failing to object to the instruction that petitioner now claims was an error.

■ Fifth, petitioner argues that counsel was ineffective because counsel failed to advise petitioner of the legal consequences of petitioner's decision to jump bail and flee the country. Petitioner asserts:

> if counsel would have been apprised the defendant of the consequence if he should even think about leaving the United States for any reason then he would lose many of his rights, such as, his right to appeal and that he would also be facing a newer charge of offense, then the defendant would have taken this advise under consideration.

(Petitioner's Brief at 20.) Petitioner's claim is entirely meritless; it is ludicrous to blame his counsel for petitioner's own illegal acts. Even one with the most rudimentary knowledge knows that bail-jumping is illegal. Thus, defense counsel did not act unreasonably in failing to advise petitioner that peti-

tioner would face serious penalties if petitioner chose to disregard his bail obligations.

In addition, petitioner has completely failed to demonstrate that counsel's alleged failure to advise petitioner regarding bail jumping prejudiced petitioner's defense. In order to establish prejudice, petitioner must show that "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Zackson,* 6 F.3d at 921 (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). In the instant case, petitioner merely asserts that if his counsel had advised him of the consequences of jumping bail, petitioner "would have taken this advise [sic] under consideration." Thus, even in his own self-serving papers, petitioner makes no claim that he would have chosen not to jump bail.

■ Sixth, petitioner asserts that counsel should have moved this Court for a judgment notwithstanding the verdict because petitioner claims that the evidence at trial was insufficient to convict him of conspiracy to possess heroin with intent to distribute. To convict petitioner on a drug-conspiracy charge under 21 U.S.C. § 846, the prosecution bore the burden at trial of proving beyond a reasonable doubt that a conspiracy existed and that petitioner " 'knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it.'" *United States v. Atehortva,* 17 F.3d 546, 550 (2d Cir.1994) (quoting *United States v. Nusraty,* 867 F.2d 759, 763 (2d Cir.1989)). The Second Circuit has recently explained in detail the heavy burden that a defendant bears when challenging the sufficiency of the evidence supporting his conviction:

> The evidence must be viewed in the light most favorable to the government, *see United States v. Amato,* 15 F.3d 230, 235 (2d Cir.1994), and all permissible inferences and issues of credibility must be drawn in the government's favor. *United States v. Torres,* 901 F.2d 205, 216 (2d Cir.), *cert. denied,* 498 U.S. 906 [111 S.Ct. 273, 112 L.Ed.2d 229] (1990). The conviction must stand if any rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt. *Amato,* 15 F.3d at 235. The jury

may properly reach its verdict based upon inferences drawn from circumstantial evidence, *United States v. Mariani*, 725 F.2d 862, 865–66 (2d Cir.1984), and pieces of evidence must be viewed in conjunction, not in isolation. *See United States v. Podlog*, 35 F.3d 699, 705 (2d Cir.1994), *cert. denied* [—— U.S. ——], 115 S.Ct. 954 [130 L.Ed.2d 897] (1995).

*United States v. Moore*, 54 F.3d 92, 100 (2d Cir.1995).

In this case, viewing the evidence in the light most favorable to the government, it is clear that a rational jury could have found that the elements of a drug-conspiracy charge had been proven beyond a reasonable doubt. The first element of a drug-conspiracy charge is that a conspiracy existed. A rational trier of fact could have concluded that a conspiracy existed, in the instant case, based on the testimony of the DEA agents. This testimony established that one of petitioner's co-defendants had negotiated a heroin transaction with a DEA agent, and pursuant to the terms of this transaction, three of petitioner's co-defendants arrived at a pre-arranged location with approximately $400,-000 and offered this money to DEA agents in exchange for heroin. The second element of a drug conspiracy charge is that the defendant must know of " 'the existence of the scheme alleged in the indictment and [must] knowingly join[ ] and participate[ ] in it.' " *Atehortva*, 17 F.3d at 550 (quoting *Nusraty*, 867 F.2d at 763). Based on the testimony at trial, a rational jury could have concluded that petitioner knew of and participated in the conspiracy because the Matistas met two of their co-defendants on a Manhattan street and gave them two bags; further testimony demonstrated that these bags contained approximately $400,000 and that, minutes later, this money was offered in exchange for heroin. Thus, there was sufficient evidence at trial to convict petitioner of conspiracy to distribute heroin.

■ Because there was sufficient evidence to convict petitioner at trial, defense counsel cannot be faulted for failing to move for a judgment notwithstanding the verdict on the ground of insufficient evidence. Therefore, petitioner has failed to satisfy the first prong of the *Strickland* test because he has failed to demonstrate that his counsel acted unreasonably. Moreover, petitioner has failed to satisfy the second prong of the *Strickland* test because, based on the foregoing discussion, petitioner was not prejudiced by counsel's failure to move for a judgment notwithstanding the verdict. Even if counsel had made such a motion, the evidence did not support granting the motion.

■ Seventh, petitioner claims that counsel should have asked this Court to charge the jury that petitioner could be found guilty of a lesser, included offense. Petitioner's argument is meritless because petitioner has not demonstrated that his counsel acted unreasonably in failing to request a lesser-included-offense jury charge. " '[A] defendant is ordinarily entitled to a lesser-included offense instruction whenever the lesser offense is completely encompassed within the greater....' " *United States v. Mussaleen*, 35 F.3d 692, 697 (2d Cir.1994) (quoting *United States v. Busic*, 592 F.2d 13, 24 (2d Cir.1978)) (brackets and ellipsis in *Mussaleen*); *see also* Fed.R.Crim.P. 31(c) ("The defendant may be found guilty of an offense *necessarily included in the offense charged*....") (emphasis added).

Even if some lesser offense could conceivably be included in the charge of conspiracy to possess heroin, petitioner has failed to demonstrate that defense counsel acted unreasonably in failing to request such a charge. Petitioner's defense was based on the theory that petitioner had merely met with his co-defendants on the street and that petitioner neither participated in the conspiracy nor intended to participate in the conspiracy. Thus, because petitioner's defense was based on the theory that petitioner had committed no crime, a lesser-included-offense charge, even if one could be conjured, would have undercut petitioner's theory of his defense. Therefore, petitioner has failed to overcome the presumption that his counsel's decision not to request a lesser-included-offense charge was " 'reasonable trial strategy.' " *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana*, 350

U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

### 2. Insufficient Evidence

Petitioner further contends that he is entitled to relief under 28 U.S.C. § 2255 because there was insufficient evidence to convict petitioner of the crime of conspiracy to possess heroin.[4]

■ As an initial matter, it is necessary to determine whether petitioner is barred from raising the sufficiency-of-evidence claim because he failed to raise this claim on direct appeal. The general rule in this Circuit is that a petitioner who fails to raise a claim on direct appeal cannot raise that claim on a § 2255 motion "unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Billy–Eko v. United States,* 8 F.3d 111, 114 (2d Cir.1993) (citing *United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982)); *see also Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992) (holding that the "cause and prejudice" requirement applies to federal prisoners seeking § 2255 relief for constitutional errors); *Muhammed v. United States,* 635 F.Supp. 1451, 1452 (S.D.N.Y.1986) (petitioner barred from bringing insufficiency-of-evidence claim on § 2255 motion because petitioner failed to raise argument on direct appeal).

■ Yet, in the instant case, the question of whether petitioner's claim is procedurally barred is further complicated by the fact that, although petitioner appealed his conviction, the Second Circuit dismissed his appeal because petitioner jumped bail. *See United States v. Matista,* 932 F.2d 1055 (2d Cir. 1991). The instant case raises the question of whether a petitioner is barred from raising a claim on a § 2255 motion because petitioner failed to raise that claim on direct appeal, albeit the appellate court refused to consider the merits of petitioner's direct appeal. This question is a novel one.

The Second Circuit adopted the rule that a petitioner who fails to raise a claim on direct appeal may not raise that claim on a § 2255 motion unless he shows cause for his default and actual prejudice ("the procedural-bar rule") in order to induce a litigant to bring a claim on direct appeal, rather than on collateral attack. The Second Circuit stated that interests of "accuracy," "integrity of prior proceedings," and "judicial economy" are promoted by the procedural-bar rule. *See Campino v. United States,* 968 F.2d 187, 190 (2d Cir.1992); *see also Forman v. Smith,* 633 F.2d 634, 639–40 (2d Cir.1980) (discussing factors that induced the court to adopt cause-and-prejudice standard in habeas corpus proceedings). As the *Forman* court explained, the procedural-bar rule promotes accuracy because, unlike collateral review, direct appellate review is likely to occur soon after trial. *Forman,* 633 F.2d at 640. A substantial lag time between trial and the filing of a motion collaterally attacking a sentence "will clearly have a major impact on the availability and recollection of witnesses." *Id.* Moreover, the *Campino* court emphasized that the procedural-bar rule promotes both judicial economy and the integrity of prior proceedings because "collateral review of convictions 'places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh.'" *Campino,* 968 F.2d at 190 (quoting *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 7, 112 S.Ct. 1715, 1718, 118 L.Ed.2d 318 (1992)).

■ Several factors indicate that the procedural-bar rule should apply in cases in which a defendant who jumped bail and appealed his conviction seeks relief under § 2255. First, because a direct appeal is a more accurate and efficient method of resolving a claim, a defendant should bring a claim

---

4. It is helpful to note the distinction between this claim and the previously discussed claim that petitioner was denied effective assistance of counsel because counsel failed to move for a judgment notwithstanding the verdict on the ground that there was insufficient evidence to convict petitioner at trial. The instant claim addresses the sufficiency of the evidence itself, while the previously discussed claim addresses whether counsel was ineffective because of counsel's alleged failure to move for a judgment notwithstanding the verdict on the ground that the evidence at trial was insufficient.

on direct appeal, rather than by collateral attack, whenever practicable. Direct appeal remains an avenue open to a bail jumper, even though an appellate court may choose to exercise its discretion and dismiss the direct appeal on the ground that the appellant jumped bail.

Second, even if the appellate court chooses to dismiss a bail jumper's appeal, applying the procedural-bar rule would, nonetheless, promote judicial economy and the integrity of prior proceedings. The Second Circuit adopted the procedural-bar rule because permitting litigants to seek unrestricted collateral review of convictions "may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh." *Campino*, 968 F.2d at 190 (quoting *Keeney*, 504 U.S. at 7, 112 S.Ct. at 1718). If the procedural-bar rule is applied in cases involving bail jumpers, such litigants will be dissuaded from withholding claims for manipulative purposes and will have a powerful incentive "to present claims when evidence is fresh."

Third, all bail jumpers should raise their claims on direct appeal because an appellate court may, in its discretion, choose to decide the appeal on the merits. If the appellate court chooses to reach the merits of an appeal, then the interests of accuracy, integrity, and judicial economy will all be furthered.

Fourth, bail jumpers should not be afforded protections that other defendants do not receive. A defendant who respects his bail obligations is subject to the procedural-bar rule, and there is no reason why a defendant who disregards his bail obligations should be exempt from this rule. Such an exemption would, in effect, reward a bail jumper for his crime by giving him access to avenues of collateral review that are foreclosed to litigants who do not jump bail.

Further, it should be noted that if a bail jumper raises a particular claim on direct appeal and the appellate court chooses to dismiss the appeal without considering the merits, that claim would not be barred on a subsequent § 2255 motion. The rule is well settled that " 'section 2255 may not be employed to relitigate questions which were

*raised and considered* on direct appeal.' " *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992) (emphasis added) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986) (*per curiam* )). When an appellate court chooses to dismiss an appeal without examining the merits, however, the court does not "consider" the questions raised on direct appeal. Therefore, the rule in *Cabrera* would not apply in such cases.

The facts of the instant case demonstrate that the procedural-bar rule should apply to a petitioner whose appeal is dismissed because the petitioner jumped bail. As discussed previously, the procedural-bar rule is designed to dissuade litigants from withholding claims for manipulative purposes and is designed to encourage litigants to bring claims when the evidence is fresh. In the instant § 2255 motion, petitioner challenges the sufficiency of the evidence against him. This evidence, which petitioner now claims is insufficient, is over six years old and is far from fresh. Moreover, petitioner should not be afforded additional protections as a reward for jumping bail. Defendants who respect their bail obligations are subject to the procedural-bar rule, and petitioner's crime of bail jumping does not entitle him to additional opportunities for collateral review.

Therefore, this Court holds that the procedural-bar rule applies in the instant case. Under that rule, a petitioner who fails to raise a claim on direct appeal cannot raise that claim on a § 2255 motion "unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." *Billy–Eko*, 8 F.3d at 114 (2d Cir. 1993). In the instant case, not only did petitioner fail to raise the sufficiency-of-evidence argument on appeal, but petitioner's memorandum of law in support of his § 2255 motion entirely fails to mention either cause or prejudice.

Even if petitioner had demonstrated both cause and prejudice for his procedural default, however, his insufficiency-of-evidence claim would still be meritless. As discussed previously, there was sufficient evidence at trial for a rational jury to conclude beyond a

reasonable doubt that petitioner was guilty of conspiracy to distribute heroin.

### 3. Motion To Modify Sentence

Petitioner also moves to modify his sentence, pursuant to 18 U.S.C. § 3582(c)(2), which states:

**(c) Modification of an imposed term of imprisonment.** The court may not modify a term of imprisonment once it has been imposed except that—

. . . .

(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*), upon motion of the defendant ... the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Thus, this statute permits a Court retroactively to apply a reduction in a sentencing range only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The "applicable policy statements" mentioned in this statute are contained in section 1B1.10 of the Sentencing Guidelines ("Guidelines"), which lists all of the Guidelines amendments that have retroactive effect. *See* U.S.S.G. § 1B1.10(a) ("If none of the amendments listed in subsection (c) [of § 1B1.10] is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized."); *see* U.S.S.G. § 1B1.10(c) (listing all amendments to Sentencing Guidelines that have retroactive effect); *United States v. Caceda*, 990 F.2d 707, 710 (2d Cir.1993) ("Only certain enumerated amendments are specified by the Guidelines as exceptions to the general rule that amendments are not to be applied retroactively...."). Therefore, petitioner is entitled to a modified sentence, pursuant to 18 U.S.C. § 3582(c)(2), if the term of imprisonment under the Guidelines for narcotics conspiracy has been lowered and if the Sentencing Commission's policy statements, which are contained in Guidelines section 10(B)1.10, indicate that this lower term of imprisonment should be applied retroactively.

 Petitioner claims that he is entitled to a sentence modification under Guidelines section 5C1.2, which lowers the term of imprisonment imposed in some narcotics-conspiracy cases. The Sentencing Commission's policy statements, however, do not state that this section should have retroactive effect. As previously discussed, Guidelines section 1B1.10(c) contains an exhaustive list of amendments that apply retroactively, and none of these amendments applies to section 5C1.2. Therefore, section 5C1.2 does not entitle petitioner to a modified sentence.

 Moreover, even if the Sentencing Commission intended that section 5C1.2 be applied retroactively, petitioner would, nevertheless, fail to qualify for a sentence modification because section 5C1.2 does not apply to the facts of the instant case. Section 5C1.2 requires a Court to disregard a statutory minimum sentence if five requirements are met. One of these requirements is that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or a common scheme or plan...." U.S.S.G. § 5C1.2(5). Yet, petitioner neither cooperated with the government nor provided the government with "all information and evidence the defendant ha[d] concerning the offense." Rather, petitioner contested the charge against him by pleading "not guilty" and by going to trial. In fact, far from cooperating with the Government, petitioner jumped bail and fled the country prior to sentencing. Thus, even if section 5C1.2 could be applied retroactively, it would not apply in the instant case.

Therefore, petitioner's motion is meritless.

### CONCLUSION

Petitioner's § 2255 motion is DENIED.

Petitioner's motion to modify his sentence, pursuant to 18 U.S.C. § 3582(c)(2), is DENIED.

SO ORDERED.